GEORGE C. NIGHTINGALE & another, Executors, *v.* THE STATE MUTUAL LIFE INSURANCE COMPANY OF WORCESTER.

A life policy provided, that the limits of constant residence of the person whose life was insured by it, should be, New England, and the states of New York, New Jersey, Pennsylvania, and Ohio, with a privilege to travel or be in any other settled portions of the United States, or the British Provinces of Canada, New Brunswick, and Nova Scotia, under certain after-mentioned restrictions.   One of the conditions of the policy was, that if the person whose life was insured should, without the consent of the insurance company first had and indorsed upon the policy, " between the first day of July and the fifteenth day of October, go into any other portion of the United States, beyond the limits of constant residence permitted to him, and be in such other portions of the United States more than five days," the policy was to become void, and all payments thereon were to be forfeited to the company.   The policy further provided, that " in case of forfeiture from the above, or any other cause, the party interested shall have the benefit of such equitable adjustment as may, from time to time, be provided by the board of directors; " and it appeared by the charter of the company, which embraced as members the shareholders of a guaranty stock to the amount of $100,000, and the persons whose lives should be insured by it, that the directors were to be elected, one half out of each of the two classes of the members of the company, by the joint votes of both classes.   The person whose life was insured, who was the Protestant Episcopal Bishop of Rhode Island, in the early part of July, 1852, went into the state of Maryland, during the absence of the Bishop of Maryland in Europe, to perform episcopal functions there, without notice to or the consent of the insurance company, and after remaining in that state about ten days in the performance of his duties, was attacked

Nightingale & another, Executors, *v.* The State Mutual Life Ins. Co. of Worcester.

with apoplexy and died; *it being in proof that his death was neither caused or hastened by the change of climate, but grew out of constitutional causes alone, equally operative in every parallel of latitude. After his death, his executors applied to the directors of the insurance company for the whole or some portion of the sum insured, as a matter of equitable adjustment, who voted to pay to the heirs of the bishop the office value for the surrender of the policy, which was declined by the executors.*

Upon a suit by the executors upon the policy, *it was held*, that although the executors would have been entitled to the benefit of any equitable adjustment provided for by established rules of the directors, existing at the time of the forfeiture, as well as to any which might be accorded by their special act, yet that the establishment of such rules was left by the policy wholly within the discretion of the directors; and that the court had no power to interfere with their action, or to dispense with or to qualify the forfeiture of the policy according to its own notions of what would be an equitable adjustment under the circumstances.

Assumpsit by the plaintiffs, as executors of the late Rt. Rev. John Prentiss Kewley Henshaw, Bishop of Rhode Island, to recover $1,500, the amount of a certain policy of life insurance effected with the defendant company, by Bishop Henshaw, on his life, and commencing the 1st day of April, 1848. The case, by agreement, was submitted to the court, in law and fact; and thereupon it appeared, that in July, 1852, during a visit of Bishop Whittingham, of Maryland, to Europe, the late Bishop Henshaw was called upon to minister in his episcopal office in the diocese of Maryland, and having been engaged in his functions there for about ten days, was, at the end of that time, at the residence of James Richardson, Esq., near Buckeye Town, in Frederick county, Maryland, attacked with apoplexy, of which, on the 20th day of July, 1852, he died. It was in proof, that the death of Bishop Henshaw was neither caused nor hastened by the change of climate, but grew out of constitutional causes alone, equally operative in every parallel of latitude. The policy sued, upon which the annual premiums and payments stipulated had been duly paid, contained, amongst others, the following clauses :—

" And the said company further agree, that the person whose life is thus assured, may reside constantly anywhere within the limits of New England, or of the states of New York, New Jersey, Pennsylvania, and Ohio ; and may travel and be in any other settled portions of the United States, or the British Provinces of Canada, New Brunswick, and Nova Scotia, under the restrictions and limitations hereinafter mentioned; pro-

vided, however, and this policy is entered into, and accepted, upon the following express conditions, namely ; " (Here follow numerous conditions, and amongst others, the three following, upon the breach of the last of which the defence turned.)

" Or, if such person shall, without the consent of the company first had and indorsed upon this policy, go out of the settled limits of the United States, except into the settled limits of the British Provinces aforesaid ;

" Or, if such person, without such consent so indorsed, shall, between the first day of June and the first day of November, go south of the thirty-eighth degree of north latitude ;

" *Or, if such person, without such consent so indorsed, shall, between the first day of July and the fifteenth day of October, go into any other portion of the United States, beyond the limits of constant residence permitted herein, and be in such other portions of the United States more than five days;* " " in any and all such cases, this policy shall be void, and all payments thereon forfeited to said company ; but in case of forfeiture from the above, or any other cause, the party interested shall have the benefit of such equitable adjustment as may, from time to time, be provided for by the board of directors."

From its charter it appeared, that the defendant company embraced as members, shareholders of a guaranty stock to the amount of $100,000, as well as the persons whose lives were insured by it, amongst all whom the profits of the business were to be divided in a regulated mode, thus combining the features of an ordinary stock, with those of a mutual insurance company ; and that the directors were to be elected, one half each, out of the two classes of members of the corporation, by the joint votes of the members of both classes.

It appeared that the visit of the bishop to Maryland, during which he died, was made without notice to or consent of the defendants ; and that since his death, his executors had made an unsuccessful application to the board of directors of the insurance company for the whole or some portion of the sum insured, as a matter of equitable adjustment under the circumstances. The directors, however, voted to pay to the heirs of Bishop Henshaw, the *office value* for *surrender* of the policy,

amounting to $169.65, of which they gave notice through their secretary, to the executors, by letter of the date of July, 1853, the offer contained in which vote had not however been accepted by the executors.

The case was shortly argued by *T. A. Jenckes*, for the plaintiffs, and by *Abraham Payne*, for the defendants.

*Jenckes* cited *Anderson* v. *Fitzpatrick*, 24 Eng. L. & Eq. 1, (Lord St. Leonard's opinion, pp. 13 and 15,) and Bunyan on Life Insurance, p. 80, for the principle, that the language of the conditions of a policy is to be construed most strongly against the insurers, as *their* language, especially where, as in this case he contended it was, the condition was new and unusual; and relied upon the qualifying clause of the terms of forfeiture contained in the policy, as holding out an express promise of an equitable adjustment in case of forfeiture from the alleged, or any other cause, which in this case had not been kept by the company, and which he called upon the court to enforce; claiming as such, under the circumstances, the amount insured, with interest.

He also cited *Raine* v. *Bell*, 9 East, 195, and the class of cases there referred to, as throwing light upon the mode in which conditions are construed, regarding, as he did, the conditions of this policy as qualified by the clause stipulating for equitable adjustment.

*Payne* relied, in defence, upon the forfeiture caused by the insured's going beyond the limits of residence prescribed by the policy, without consent, and there remaining beyond the prescribed time, during the season of the year prohibited, for such going and remaining, and contended, that the qualifying clause with regard to equitable adjustment, left that matter wholly at the discretion of the directors, as arbitrators for the benefit of all concerned, whose decision, upon full hearing, had been adverse to the claim of the plaintiffs, and was final. To the construction of the policy he cited *Hathaway* v. *Trenton Mut. Life & Fire Ins. Co.* 11 Cushing, 448.

AMES, C. J. It is admitted that the late Bishop Henshaw did, without consent of the defendant company issuing this policy, " first had and indorsed thereon," and between the 1st day of

4 *

July and the 15th day of October, 1852, go into the state of Maryland, a portion of the United States beyond the limits of constant residence permitted by the policy, and there remain more than five days, to wit, about ten days, at the end of which period, and about the 20th day of July of that year, he died. The holy errand on which he went, the absence of all connection between his going and remaining, and the cause of his death, are not permitted to swerve our judgment from the legal effect of so plain a breach of a condition of this policy, upon the occurring of which it is, by its own terms, " to be void, and all payments thereon to be forfeited to the company." It is true, that by the qualifying clause of the condition of forfeiture, the executors of the assured would have been entitled to the benefit of any equitable adjustment provided for by existing rules established by the directors, or accorded by their special act. Whether such rules should be established, or such special dispensation from the forfeiture should be granted was, as it seems to us, left by this qualifying clause wholly to the discretion of the directors, who " from time to time " might act in the matter; except indeed, that they would not be permitted to change, to the injury of the assured, an established rule of adjustment existing at the time of the act or omission of forfeiture. The construction which supposes that such discretion was designed by both parties to the contract to be reposed in the directors, as fair arbiters for all interested, borrows support from the fact, that, under the charter of this company, the directors are elected by the joint votes of the assured and holders of the guaranty stock, and are to be chosen, in moieties, out of these two classes of the members of the corporation. No rule of equitable adjustment applicable to the case at bar appears to have been established by the directors of this company, and the request made to them by the claimants for special action in their favor was, upon full consideration, rejected. We cannot interfere with their discretion in this matter without doing violence to the contract upon which we are called to adjudicate, and must therefore render

*Judgment for the defendants.*